Ginam Lee (SBN 204561)
Legacy Pro Law PC dba LPL Lawyers
3600 Wilshire Boulevard, Suite 1510
Los Angeles, CA 90010
Tel.  (213) 382-8051
Fax. (866) 203-0408
E-mail:  gLee@LawLPL.com
Attorneys for PLAINTIFF CATWALK TO SIDEWALK, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATWALK TO SIDEWALK, INC., a California Corporation<br><br>Plaintiff,<br><br>vs.<br><br>LANSEL ANN HURT-WATSON, an individual; HEYRI J. INC., dba EVERLEIGH, a California Corporation; TIFFANY YIJUNG LIM, an individual; and DOES 1 through 50, inclusive<br><br>Defendants. | **Case No: __2:19-CV-08388___**<br><br>**COMPLAINT FOR:**<br><br>1. Breach of Duty of Loyalty;<br>2. Constructive Fraud;<br>3. Breach of Duty of Confidentiality<br>4. Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016 (18 U.S.C. 1836, et al);<br>5. Concealment<br>6. Negligent Misrepresentation<br>7. Vicarious Liability<br>8. Aiding and Abetting<br><br>**DEMAND FOR JURY TRIAL** |

## SUMMARY OF THE ACTION

This dispute arises out of the absence of honor of Plaintiff's former sales agent who essentially cheated on Plaintiff by secretively working for Plaintiff's competitor to the Plaintiff's detriment and Defendants' gain.  If cheating was not bad enough, Defendants used and diverted Plaintiff's proprietary information to sell to Plaintiff's buyer.  Watson's deeds are dishonorable.  Defendants' conducts cross boundaries of decency, civility, and fair play.

## PARTIES

1. Plaintiff CATWALK TO SIDEWALK, INC., ("Catwalk" or "Plaintiff") is now, and at all times herein mentioned in this complaint was, a corporation existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

2. Defendant LANSEL ANN HURT-WATSON ("Watson"), an individual, is now, and at all times mentioned in this complaint was, an individual residing in the County of San Diego, California.

3. Defendant HEYRI J. INC., dba EVERLEIGH ("Everleigh") is now, and at all times herein mentioned in this complaint was, a corporation existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

4. Defendant TIFFANY YIJUNG LIM ("Lim") is now, and at all times mentioned in this complaint was, an individual residing in the County of Los Angeles, California.

5. The true names and identities of DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at this time, who therefore sue said defendants by such fictitious names, and when the true names and capacities of such defendants are ascertained. Plaintiff will ask leave of Court to amend this complaint to insert the same.

6. Plaintiff is informed and believe and, on the basis of such information and belief, allege that each Defendant named in this complaint was, at all times herein mentioned, and now is, (for purposes of the law of tort, contract and otherwise) the agent, principal, representative, servant, master, partner, trustee, associate, affiliate, co-conspirator, employer and/or employee of each Defendant, and that each defendant acted within the course and scope of such capacities, within actual and/or apparent authority of such capacities, within the course and

scope of such conspiracies, and with actual and/or constructive notice of the knowledge of one another.

7. Plaintiff is informed and believes and, based thereon, allege that at all times herein mentioned, Defendants and each of them, were co-conspirators and joint ventures.

8. Plaintiff is informed and believes that there now exists, and at all times herein mentioned there existed, a unity of interest and ownership between Everleigh and Lim such that any individuality and separateness between those Defendants has ceased. Adherence to the fiction of the separate existence of the defendant entities would sanction a fraud on Plaintiff and/or would promote injustice.

## JURISDICTION AND VENUE

9. This action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, et al, and this Court has subject matter jurisdiction under 28 U.S.C. §1331 and 18 U.S.C. §1836(c). This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they form part of the same case or controversy as the federal claim.

10. This Court has personal jurisdiction over Defendants because they have transacted business in and have caused injury to Plaintiff within Los Angeles County, California.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## STATEMENT OF FACTS
### Catwalk and Watson History

12. Plaintiff Catwalk is a Los Angeles based company since 2005 in the business of designing and manufacturing clothing for sale nationwide to leading fashion retailers such as Nordstrom.

13. Watson started working for Catwalk on or about March of 2007 as Plaintiff's sole sales agent.

14. Watson's job involved selling Catwalk's clothes to retailer in exchange for a commission.

15. To accomplish her job, Catwalk provided Watson access to Plaintiff's confidential and proprietary information from designs, market trends, client preferences, pricing, production, marketing, and sales knowhow and strategies.

16. Plaintiff also introduced Watson to potential buyers.

17. For over 11 years, Catwalk and Watson built a continuous relationship.

18. During that time, Watson never informed Plaintiff that she worked for another clothing manufacturer.

### Watson Abruptly Resigns from Catwalk

19. On March 2, 2018, Watson sent an email to Plaintiff's CEO, Mr. Billy Kang ("Billy"), that she will stop working for Plaintiff effective 4 days later on March 6, 2018 ("Resignation"). Few days before on Kang's birthday, Watson discussed retiring from the fashion industry with Billy.

20. The buyers and accounts that Watson handled for Catwalk represented a significant portion of Catwalk's business.

21. Despite Billy's pleas for Watson to stay with Catwalk, or at minimum, give Catwalk some time to transition, Watson insisted that March 6, 2018 would be her last date.

22. In her Resignation, Watson's purported reason for her sudden departure was that she *"was really tired"* and needed to take some time to *"reflect and decide on what I want to do for the next chapter of my life."*

23. The "next chapter" of Watson's life proved to be the continuation of a prior chapter and revealed her duplicity.

**Watson's Deceit Comes to Light**

24. On or about April 3, 2018, Plaintiff's employee witnessed Watson working for Plaintiff's competitor, defendants Everleigh and Lim. Everleigh manufactures clothing with offices in Los Angeles.

25. Unbeknownst to Plaintiff, Watson had been communicating with Lim since August 2017 about Watson's employment at Everleigh. Those discussions led to a written agreement and Watson started working for Everleigh in October 2017. Based on the compensation and commission structure from Everleigh, Watson positioned herself to potentially earn far more than she received from Plaintiff.

26. Unbeknownst to Plaintiff, Watson was selling Everleigh's products to Nordstrom while working for Plaintiff.

27. Unbeknownst to Plaintiff, Watson and Everleigh used Plaintiff's proprietary, confidential, and trade secret information to sell Everleigh's products to Nordstrom to Plaintiff's detriment.

28. In essence, while vowing loyalty to Plaintiff, Watson was cheating with Lim and Everleigh.

**FIRST CAUSE OF ACTION**
**(BREACH OF DUTY OF LOYALTY**
**Against WATSON)**

29. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in full herein.

30. From March 2007 to March 6, 2018, Watson worked for Plaintiff as its sales agent.

31. At all relevant times during her agency with Plaintiff, Watson owed

Plaintiff a duty of undivided loyalty.

32. An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship

33. An agent has a duty not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of the principal or otherwise through the agent's use of the agent's position.

34. An agent has a duty not to deal with the principal as or on behalf of an adverse party in a transaction connected with the agency relationship.

35. Throughout the duration of an agency relationship, an agent has a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors. During that time, an agent may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship."

36. During the terms her employment with Plaintiff, Watson breached her duty of loyalty owed to Plaintiff by, among the acts alleged above, representing Plaintiff's competitor and selling competitive products to Plaintiff's buyer.

37. Plaintiff never gave informed consent to Watson's conduct.

38. As a result of Watson's breach of the duty of loyalty, Plaintiff has been damaged in an amount to be proven at trial

39. Watson's conduct was not only knowing, but also malicious, fraudulent and oppressive, entitling Plaintiff to an award of punitive or exemplary damages.

## SECOND CAUSE OF ACTION
## (CONSTRUCTIVE FRAUD
## Against WATSON)

40. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in

full herein.

41. At all relevant times during her employment, Watson was Plaintiff's agent.

42. Watson acted on Plaintiff's behalf for purposes of selling Plaintiff's clothing to retailers such as Nordstrom.

43. Watson knew, or should have known, that Plaintiff relied that Watson worked solely for Plaintiff and represented only Plaintiff's clothing to buyers such as Nordstrom.

44. Watson misled Plaintiff by, among the acts described above, failing to disclose that she simultaneously worked for Everleigh or that she represented Everleigh's clothing to buyers such as Nordstrom.

45. Because of Watson's constructive fraud, Plaintiff has been damaged in an amount to be proven at trial.

46. Watson's conduct was a substantial factor in causing Plaintiff's harm.

47. Watson's conduct was not only knowing, but also malicious, fraudulent and oppressive, entitling Plaintiff to an award of punitive or exemplary damages.

## THIRD CAUSE OF ACTION
## (BREACH OF DUTY OF CONFIDENTIALITY
## Against WATSON)

48. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in full herein.

49. At all relevant times during her employment, Watson was Plaintiff's agent.

50. At all relevant times during her employment, Watson owed Plaintiff as duty of undivided loyalty.

Case 2:19-cv-08388-ODW-JC   Document 1   Filed 09/27/19   Page 8 of 14   Page ID #:8

51. An agent has a duty (1) not to use property of the principal for the agent's own purposes or those of a third party; and (2) not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party.

52. During the terms her employment with Plaintiff, Watson breached her duty of confidentiality owed to Plaintiff by, among other acts described above, using and disclosing confidential, trade secret information to Everleigh, a direct competitor of Plaintiff.

53. Plaintiff never gave informed consent to Watson's conduct.

54. Plaintiff's confidential, proprietary, and trade secret information was not a matter of general knowledge;

55. As a result of Watson's breach, Plaintiff has been damaged in an amount to be proven at trial

56. Watson's conduct was not only knowing, but also malicious, fraudulent and oppressive, entitling Plaintiff to an award of punitive or exemplary damages.

## FOURTH CAUSE OF ACTION
## (MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016, 18 U.S.C. §1836, ET seq.
## Against ALL DEFENDANTS and DOES 1-50)

57. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in full herein.

58. Plaintiff's financial, business, technical, and economic information, including but not limited to: clothing designs; clothing styles; market trends; client preferences; client pricing; production and delivery knowhow; marketing and sales strategies; and any work-in-progress, constitute trade secrets as defined by the

- 8 -
**COMPLAINT**

Defend Trade Secrets Act of 2016, 18 U.S.C. §1836.

59. The trade secret information was developed over a substantial period of time, required substantial money and effort to compile, is unavailable to the public or to others in the industry of manufacturing and selling women clothing, and would be of great value to Plaintiff's competitors.

60. Plaintiff has consistently made reasonable efforts to ensure that its trade secret information remain secret and are not disclosed to, or used by, unauthorized persons. Plaintiff made reasonable efforts to ensure that its trade secrets remained a secret by disclosing them only to certain parties on a need to know basis, including but not limited to, securing access to certain information such as designs and work-in-progress by requiring a password for access.

61. Plaintiff's clothing are regularly shipped and sold in interstate and foreign commerce. As such, Plaintiff's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be sued, sold, shipped and/or ordered in interstate or foreign commerce.

62. Plaintiff's trade secret information described herein derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, others who would obtain economic value from the disclosure or use of the information.

63. Plaintiff is informed and believes, and there on alleges, that Watson wrongfully obtained and utilized Plaintiff's trade secret information while working for Plaintiff and that Watson has, without Plaintiff's consent, utilized those trade secrets to injure Plaintiff and benefit Defendants.

64. Lim and Everleigh acquired Plaintiff's trade secret through Watson who knew or had reason to know that the trade secret was acquired by improper means, or disclosure or use of a trade secret.

65. Lim and Everleigh also knew or should have known that the trade

secrets delivered to them by Watson were trade secrets acquired by improper means, disclosure, or use of a trade secret.

66. On or about March 6, 2018, Watson terminated her work with Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that Watson beginning on or about October of 2017 and continuing to the present, Defendants are improperly misappropriating Plaintiff's proprietary, confidential, and trade secret information.

67. Furthermore, Watson withheld certain information belonging to Plaintiff before her departure from Plaintiff, and instead diverted such information to Lim and Everleigh, effectively preventing and disrupting Plaintiff from obtaining orders from Nordstrom for the latter half of 2017 and early 2018. Plaintiff historically received substantive orders from Nordstrom.

68. Plaintiff is informed and believes, and thereon alleges, unbeknownst to Plaintiff, Watson misappropriated proprietary information that belong to Plaintiff in order for Defendants to develop similar designs and sell them to Nordstrom for Defendants' benefit.

69. Defendants' acquisition, use, and/or disclosure of Plaintiff's proprietary, confidential, and trade secret information were a substantial factor in causing Plaintiff to suffer harm and Defendants to be unjustly enriched.

70. The wrongful acts of Defendants as alleged constitute misappropriation of trade secrets, as defined in the Defend Trade Secrets Act.

71. As a direct and proximate result of such misappropriation, Plaintiff has suffered actual damages in excess of several million dollars, to be proven at trial.

72. Plaintiff is entitled to damages for lost profits, cost of materials, and loss of good will.

73. Defendants' actions were willful and malicious, and were undertaken in knowing disregard of Plaintiff's rights. Defendants' engaged in despicable

conduct and acted with malice, fraud and oppression and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to recover punitive damages in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION
## (CONCEALMENT against WATSON)

74. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in full herein.

75. At all relevant times during her employment, Watson was Plaintiff's agent.

76. Watson intentionally failed to disclose to Plaintiff that, among the acts alleged above, she was working for Plaintiff's competitor and was selling competitor's products to Nordstrom.

77. Plaintiff did not know that Watson was working for another company or selling the competitor's products to Nordstrom.

78. Watson intended to deceive Plaintiff by concealing these facts.

79. If the omitted information were disclosed, Plaintiff reasonably would have terminated the relationship and stop sharing Plaintiff's information.

80. Plaintiff was harmed.

81. Watson's concealment was a substantial factor in cause Plaintiff's harmed.

82. Watson's actions were willful and malicious, and were undertaken in knowing disregard of Plaintiff's rights. Defendants' engaged in despicable conduct and acted with malice, fraud and oppression and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to recover punitive damages in an amount according to proof at trial.

///

## SIXTH CAUSE OF ACTION

## (NEGLIGENT MISREPRESENTATION against WATSON)

83. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in full herein.

84. Watson represented to Plaintiff that she worked solely for Plaintiff.

85. Watson's representation was not true since she worked for Plaintiff's competitor simultaneously.

86. Watson had no reasonable grounds for believing the representation was true when she made it;

87. Watson intended that Plaintiff rely on this representation

88. Plaintiff reasonably relied on Watson's representation

89. Plaintiff was harmed.

90. Watson's concealment was a substantial factor in Plaintiff's harm.

## SEVENTH CAUSE OF ACTION

## (VICARIOUS LIABILITY against EVERLEIGH AND LIM And DOES 1 through 50))

91. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in full herein.

92. Plaintiff was hard by Watson's breach of duty of loyalty, constructive fraud, breach of confidentiality, misappropriation of trade secrets under the Defend Trade Secrets Act, concealment, and/or negligent misrepresentation.

93. Watson was Everleigh and Lim's agent at all relevant times.

94. Watson was acting in the scope of her agency when she harmed Plaintiff.

95. As a result, Everleigh and Lim are responsible for the harm Watson

caused Plaintiff.

## EIGHTH CAUSE OF ACTION
## (AIDING AND ABETTING against LIM and EVERLEIGH
## And DOES 1 through 50)

96. Plaintiff repeats, re-alleges, and incorporates herein by this reference each and every allegation contained in the paragraphs above, as though set forth in full herein.

97. Plaintiff is informed and believes, and thereon alleges, Lim and Everleigh knew the facts herein mentioned for the following causes of action were committed by Defendant LANSEL against Plaintiff:

    a. Breach of duty of loyalty;

    b. Constructive fraud;

    c. Breach of duty of confidentiality;

    d. Violation of Defend Trade Secret Act—including misappropriation of trade secret; and

    e. Concealment; and/or

    f. Negligent misrepresentation.

98. Plaintiff is informed and believes, and thereon alleges, Defendants Lim and Everleigh gave substantial assistance and/or encouragement to Watson to carry out the above mentioned wrongful conduct by actively and/or indirectly assisting Watson, which is still on going.

99. Lim and Everleigh's conduct was a substantial factor in causing harm to Plaintiff.

100. Lim and Everleigh's actions have directly caused injury and damage to Plaintiff.

///

///

## **PRAYER**

WHEREFORE, Plaintiff pray for judgment against Defendants, jointly and severally, as follows:

1. For recovery of general, special, consequential, incidental, compensatory, resulting, proximate, and nominal damages.
2. Prejudgment interest.
3. Punitive and exemplary damages.
4. For costs of this action and reasonable attorney's fees.
5. Any other and further relief the Court may deem just and proper.

**DATED**: September 27, 2019          **LPL LAWYERS**

By: _____
Ginam Lee, Esq.
Attorneys for Plaintiff Catwalk to Sidewalk, Inc.

Legacy Pro Law PC
3600 Wilshire Boulevard, Suite 1510
Los Angeles, CA 90010
Phone: (213) 382-8051 | Fax: (866) 203-0408